IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER ALLEN *et al*,                          *

    Plaintiffs,                                          *

    v.                                                    *                Civil Case No.: 1:20-cv-03269-CCB

PPE CASINO RESORTS                                   *
MARYLAND, LLC,
                                      *

    Defendant.                                            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

> "[Social Media] can be just another place,
> not to *be*, but to *seem*."
>
> - Meg Jay, Ph.D, <u>The Defining Decade</u>
> (Emphasis added).

Combining Dr. Jay's quote with the axiom "Twitter is not real life," highlights the complexities in relying on a party's social media postings as an unvarnished chronicle of their lives or a contemporaneous journal of their true state of health and well-being. To be sure, impeaching a plaintiff claiming an inability to walk with a video they posted undertaking the latest Tik Tok™ challenge may simply be the 21st century version of the ubiquitous surveillance video surreptitiously captured by an insurance investigator. And, given the tendency of many to "overshare," documenting everything from their breakfast to their favorite Marvel™ villain, one could certainly justify a reasonable query into whether a party ever posted about the facts and witnesses underlying the lawsuit (or the lawsuit itself).[1]

---

[1] Defendant, in its opposition, asserts that in addition to the request that is the direct subject of Plaintiffs' request for a protective order, Plaintiffs' previous response to Defendant's Request for Production 21—seeking, *inter alia*, social media posts referring to the facts and witnesses underlying the lawsuit (and the lawsuit itself), should be supplemented.

But what of claims of emotional damages secondary to allegedly wrongful conduct such as workplace discrimination, wrongful termination or retaliation?  Should the inclusion of such damages by a plaintiff open the door to extensive discovery of social media posts on the theory that such posts could contradict a claim of emotional distress by portraying a seemingly happy plaintiff, or uncovering an alternative stressor that might better explain the claimed emotional distress?

Such is the dilemma at the center of the discovery dispute currently before the Court.  In this employment dispute, Plaintiffs seek "compensatory damages," which include what they term "garden variety" emotional distress for the allegedly wrongful conduct of Defendant.  (Compl., ECF No. 1 at 34; ECF No. 26-1 at 2).  Based on this claim, Defendant propounded the following Request for Production to each Plaintiff:

> Any and all social media posts, comments, profiles, postings, messages (including, without limitation, tweets, replies, retweets, direct messages, status updates, wall comments, groups joined, activity streams, and blog entries), photographs, videos, and online communications that refer or relate to Plaintiffs' emotions, feelings, or mental states from January 1, 2013, to the present.

(ECF No. 26-1 at 1).  Plaintiffs report that they are active on five different social media platforms. *Id*.

Plaintiffs seek a protective order relying chiefly on burden arguments, Defendant's lack of a "threshold showing" justifying the search, and Defendant's purported lack of good faith at the parties' discovery planning conference.  (ECF Nos. 26 & 30).  Defendant argues that its request is proper, and necessary so as to counter Plaintiffs' claims of emotional distress.  (ECF No. 29 at 8–12).

---

(ECF No. 29 at 7–8).  The Court agrees, subject to the timeframe limitation discussed with regard to Request for Production 22.

As a starting point, this Court agrees that discovery of social media "requires the application of basic discovery principles in a novel context."  *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 114 (E.D.N.Y. 2013) (*quoting Equal Emp't. Opportunity Comm'n. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010)).  Generally, social media content, even where designated as "non-public," is neither privileged nor protected by any right of privacy (beyond, of course, the protections any litigant enjoys under FRCP 26(g)).  *See Voe v. Roman Catholic Archbishop of Portland in Oregon,* No. 3:14-cv-01016-SB, 2015 WL 12669899, at *2 (D. Or. Mar. 10, 2015).

This Court also rejects the requirement urged by Plaintiffs and imposed by some other courts regarding a threshold evidentiary showing by the requesting party that an opponent's "public" social media account(s) contains relevant information, such that an exploration of non-public information is justified.  *See, e.g*, *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012).  As Judge Tomlinson cautioned in *Giacchetto*, *supra*, such an approach can lead to results that are both too broad and too narrow, and that the Federal Rules of Civil Procedure do not require a party to prove the existence of relevant material before requesting it.  *Id*. at n.1 (noting, *inter alia*, that such an approach would act as a complete discovery shield for social media users who kept their posts private).[2]

Still, discovery seeking social media must be relevant to a claim or defense, proportional to the needs of the case, and not unreasonably cumulative, duplicative, or designed to embarrass or harass.  FRCP 26(b) and (g); *see also Mailhoit v. Home Depot USA, Inc.*, 285 F.R.D. 566, 570–71 (C.D. Cal. 2012).  With regard to requests for production in particular, FRCP 34(b) further

---

[2] The Court initially asked the parties to address this issue, prior to concluding that requiring such a showing conflicted with the Federal Rules of Civil Procedure.  Even if the Court were to consider such a threshold showing requirement, Defendant argues that it is met in the present case. (ECF No. 29 at 4–7).  As the Court has rejected the requirement, it need not reach the issue of whether Defendant's proffer meets it.

requires the requesting party to describe the items to be produced with "reasonable particularity,"

such that the responding party is under reasonable notice as to what is, or is not, called for in its

response. *Mailhoit*, 285 F.R.D. at 570–71 (invoking Rule 34(b) in disallowing a request for social

media postings "that reveal, refer or relate to any emotion, feeling, or mental state of Plaintiff, as

well as communications by or from Plaintiff that reveal or refer or relate to events that could

reasonably be expected to produce a significant emotion, feeling or mental state"). *Id.* at 571; *but

see Simply Storage Mgmt.*, 270 F.R.D. at 436–37 (ordering plaintiff to produce responsive social

media posts based on identical request, *albeit limited* to those plaintiffs alleging severe emotional

distress, including post-traumatic stress disorder, rather than simply "garden variety emotional

distress claims").

A plaintiff's social media postings *could* be relevant to a claim for "garden variety"

compensatory damages to include an emotional health component.  However, some caution must

be employed.  Unlike cases alleging physical impairment, where social media posts documenting

functionality beyond that alleged in the complaint would be clearly relevant, this Court agrees with

those cases drawing a distinction between claims of physical impairment versus emotional or

mental health damages.  *See, e.g*, *Giacchetto*, 293 F.R.D. at 115–16 (recognizing "an important

distinction between the relevance of social networking information to claims for physical damages

and claims for emotional damages").  As to the latter, as one court noted, "[w]hile everything

posted on a social media website is arguably reflective of a person's emotional state[, the court]

would not allow depositions of every friend and acquaintance to inquire about every interaction

with plaintiff." *Holter v. Wells Fargo and Co.*, 281 F.R.D. 340, 344 (D. Minn. 2011).

Likewise, cases alleging "garden variety" emotional distress should be distinguished from

those that allege severe and specific emotional distress, with social media posts regarding the latter

justifying a deeper social media dive than the former.  *See Simply Storage Mgmt.*, 270 F.R.D. at

436–37; *Voe,* No. 3:14-cv-01016-SB, 2015 WL 12669899, at *2 (D. Or. Mar. 10, 2015)

(distinguishing "general emotional health" discovery requests from "emotional injury, trauma and

permanent psychological damage" requests).    This is driven both by the "particularity"

requirement found in FRCP 34(b), and the inherent shortcomings of social media posts as a reliable

and probative indicator of emotional well-being in the absence of specific emotional complaints.

That is, specifying significant and specific claims of emotional or mental health effects or

diagnoses lend the necessary precision to the responding party's search so as to satisfy FRCP

34(b), and help filter probative information from the morass of ambiguity described above in

similar fashion to how claims of physical impairment provide greater justification for social media

discovery requests.

Further, the relationship of mere "routine expressions of mood" to one's overall emotional

well-being is tenuous, in that all of us can have "good days" and bad, be momentarily elated or

sad, or even hold both emotional states at the same time (e.g., be upset at being sexually harassed

at work while also happy at a close friend's wedding).  *See Giacchetto*, 293 F.R.D. at 115 ("The

fact that an individual may express some degree of joy, happiness or sociability on certain

occasions sheds little light on the issue of whether he or she is actually suffering emotional

distress.").  This is exacerbated on social media where there can be a tendency to curate a certain

image that might understate or overstate one's true emotional state.  *Id.* at 115–16 (citing Brown,

Kathryn R., *The Risks of Taking Facebook at Face Value: Why the Psychology of Social

Networking Should Influence the Evidentiary Relevant of Facebook Photographs*, 14 Vand. J. Ent.

& Tech. L. 357, 365 (2012) ("Because social networking websites enable users to craft a desired

image to display to others, social scientists have posited that outside observers can misinterpret that impression.").

Although not separately enumerated in Defendant's Request for Production 22, it also arguably encompasses a search for "alternative stressors" that might account for the claimed emotional damages (rather than the wrongful conduct at issue). Where sufficiently serious, such alternative stressors could certainly be an important component of a defense. However, if too general, such a request can be similarly imprecise and non-probative. One can post an outburst about poor customer service, car trouble, or, as observed by the court in *Mailhoit*, interruptions in cable service. *Id*. at 572. One can share "stress" about a political outcome, movie ending, or milestone. Accordingly, a court considering such a request should consider appropriate modifiers. *See*, *e.g.*, *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 406 (D. Wyo. 2017) (emphasizing "significant" events which could reasonably be expected to result in emotional distress).

Applying the above principles to the case at hand, Plaintiffs here allege, at best, "garden variety" emotional distress stemming from the allegedly wrongful conduct. Though this is not apparent from their bare request for "compensatory damages" in their Complaint, it presumably has been or will be articulated in discovery, as Plaintiffs themselves state as much in their request for the instant protective order. (ECF No. 26-1 at 2). As such, the Court concludes that Defendant's broad request must be narrowed in light of the guidance above and also to alleviate some of Plaintiffs' concerns regarding burden.

First, Plaintiffs may limit the scope of their response to specific references to serious, non-transient emotional distress including any such distress they claim to have suffered (or for which they received treatment) in connection with the incidents described in their Complaint. This would include, at a minimum, references to diagnosable conditions, visits to professionals for treatment

of such distress, treatment regimens, and conversations regarding same.  Plaintiffs' response

should include postings, photographs and communications that relate to a specific, significant

event or chain of events that would be expected to result in meaningful emotional distress beyond

transient changes in mood, such as the death of a loved one, marital difficulties, intractable

financial difficulties, loss of employment, a serious illness or trauma, legal problems, and the like.

Additionally, the time frame for production shall be limited from August 1, 2015 (based

on the Complaint's description of the onset of difficulties (ECF No. 1 at 8)) to the date of filing

(November 11, 2020), unless Plaintiffs decide to otherwise limit the timeframe for which they seek

compensatory damages.  This will provide a sufficient sample of social media postings both in the

immediate aftermath of the event and with the passage of time.  However, Plaintiffs are instructed

not to delete any social media posts that might be responsive from January 1, 2013 to the present

in the event the Court later expands the scope of production based on Plaintiffs' response.

Finally, Plaintiffs' production is limited to information found in the typical "download" of

information obtained by Plaintiffs through their own social media providers.  For example,

according to Defendant, one's Facebook account can be downloaded by selecting "Settings" then

clicking "Download a copy of your Facebook data" under General Account Settings.  (ECF No.

29-12 at 11).  Thus, where a social media provider has built in "tools" to allow a user to obtain

their history of posts on the platform, Plaintiffs may utilize those tools even if the tools have

limitations in what they are able to provide.  It could be that the information obtained would not

include content such as comments Plaintiffs may have made on someone else's post, or other data,

or "likes" of photographs posted by third parties.  But Plaintiffs need not engage in extraordinary

efforts in obtaining responsive information beyond the history each platform is typically able to

provide its users.

The Court is not foreclosing an expansion of the scope of production upon a specific showing from Defendant justifying such an expansion after Plaintiffs' initial production is made. Additionally, the Court is not foreclosing additional "burden" arguments should the narrowed scope of production or any of the specific types of information sought (i.e., "tweets, replies, retweets, direct messages, status updates, wall comments, groups joined, activity streams, and blog entries") prove unwieldy. The Court does not rule out considering cost shifting in the future, although does not believe the current facts justify a departure from the general rule that a producing party, as the creator of the information sought, should pay its own costs of production. *See, e.g.*, *Thompson v. U.S. Dept. of Hous. & Urban Dev.,* 219 F.R.D. 93, 97 (D. Md. 2003).

As a final matter, the Court does not find that Defendant's alleged failure to address social media discovery amounts to a bad faith violation of the discovery rules that would justify barring social media discovery. First, this action was exempted from the formal requirement of Rule 26(f) by Judge Blake. (ECF No. 9 at 2). While the parties were nonetheless encouraged to confer regarding a discovery plan and the plan is silent as to social media, the Court cannot extrapolate from that bad faith or an attempt to mislead. To the extent that Plaintiffs seek a reasonable extension of the discovery deadline to comply with this Order, the Court would be amenable to a limited extension, and would urge the parties to confer in an attempt to reach agreement on that for the Court's consideration.

For the foregoing reasons, Plaintiffs' Motion for Protective Order (ECF No. 26) is **GRANTED IN PART AND DENIED IN PART**. A separate order follows.


Date: June 14, 2021

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

8